UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


DAMON CLARK,                        ) 1:07CV0940
                                    )
        Petitioner                  ) JUDGE KATHLEEN O'MALLEY
                                    ) (Magistrate Judge Kenneth S. McHargh)
        v.                          )
                                    )
STUART HUDSON,                      )
        Warden,                     )
                                    )
        Respondent                  ) REPORT AND RECOMMENDED
                                    ) DECISION OF MAGISTRATE JUDGE


McHARGH, MAG. J.

        The petitioner, Damon Clark ("Clark"), has filed pro se a petition for a writ of

habeas corpus arising out of his 2003 convictions on one count of aggravated

murder, with a firearm specification in the Cuyahoga County, Ohio, Court of

Common Pleas.  The petition is based on five grounds:

> 1.  The petitioner was denied his constitutional right to a fair trial,
> when the state allowed its chief witness to give false, misleading
> and/or perjured testimony when then formed the key elements of the
> state's charges.
>
> 2.  The petitioner was denied the effective assistance of appellate
> counsel when counsel neglected to raise a Miranda violation on direct
> appeal.
>
> 3.  The petitioner was denied the effective assistance of appellate
> counsel when counsel failed to raise the ineffective assistance of trial
> counsel on direct appeal.
>
> 4.  The petitioner was denied due process of law, procedural due
> process of law and the right to frame and present constitutional right
> violations before the reviewing courts when appellate counsel only
> provided him with select portions of the trial transcript.

5.  The petitioner was denied due process of law and procedural due process of law when the court of appeals refused all requests for a copy of their ruling on the petitioner's pro se application for reopening of appeal.

(Doc. 1, at pp. 15-23.)


## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural

background:

The Cuyahoga County Grand Jury indicted Clark on one count of aggravated murder with a three-year firearm specification. Clark's two brothers were indicted in the same case on the same charge. His brother Doug Clark was acquitted of the charge. In exchange for a guilty plea to aggravated assault, his brother Jimmie Clark agreed to testify on behalf of the State.

At trial, Jimmie Clark testified that prior to the shooting of the victim, someone stole his brother Doug's car speakers. Sometime afterwards, he and his brothers met at their grandmother's house and discussed the theft and concluded Rayneel Reeves had committed the theft. Reeves was a known car thief who had previously repaired the speakers.

During the discussion, Jerdel Griffin and Marlon Bell drove by in Griffin's car. They were friends of Reeves. Doug Clark and Griffin argued, and a fist fight ensued. Damon Clark and Bell pulled the men apart and Griffin left with Bell.

However, approximately twenty minutes later, Griffin returned on foot along with his brother Jermel, Reeves, Dwayne Wilder and Reeves' brother, Tommie Smith. Griffin and Doug Clark fought again and the scuffle continued down the street. Jimmie Clark and Reeves then began to argue. Jermel Griffin returned to the area where Jimmie Clark and Reeves were. Thereafter, Reeves attempted to coerce Griffin and Jimmie Clark to fight. However, Jimmie Clark contended he only "exchanged words" with Griffin.

2

While Jimmie Clark argued with Griffin, he saw Damon Clark, with a gun in his hand, chasing Reeves. He heard shots and observed Damon Clark aim a gun at Reeves. Reeves fell to the ground. Damon Clark continued running toward Reeves and shot him as Reeves lay on the ground. Reeves' brother Tommie Smith then began shooting at Damon and Jimmie Clark. Jimmie Clark admitted that Damon Clark and Reeves had "problems" in the past, but he did not know what it concerned.

Officer Dwayne Duke testified that at approximately 11:30 p.m. he received a radio broadcast that shots were fired in the area of East 136th Street and Beachwood Avenue. When he arrived, the victim had already been taken to the hospital and a few spectators were present. He retrieved several shell casings from the scene. The shell casings were from a .38 caliber handgun and a .45 caliber handgun.

Doug Wilder testified he was a friend of the Clark brothers and knew that Doug Clark owned a. 45 caliber handgun. Wilder was also friends with Reeves and Smith. According to Wilder, on the evening of the shooting, he, Reeves, and Smith were working on a car in his backyard. They went to East 137th Street and Beachwood Avenue around 11:00 p.m. to watch Griffin fight Doug Clark. Wilder saw Griffin and Doug Clark sparring and moving towards East 136th Street. He eventually lost sight of them and walked away, believing the fight was over. As he did so, he heard five to six gunshots. He hid in nearby bushes until the shooting stopped. He then peered from the bushes and saw Reeves lying on the ground with Damon Clark standing next to him pointing a gun at Reeves' back. Thereafter, Wilder observed Damon Clark flee in a vehicle with his two brothers.

Marlon Bell testified he knew all parties involved. He observed the fight between Doug Clark and Griffin earlier in the evening. During that earlier fight, Doug pulled out a .45 caliber handgun and handed it to Damon Clark. Damon Clark then handed the gun to his brother Jimmie Clark. When Bell attempted to break up the fight between Doug Clark and Griffin, Jimmie Clark hit Bell on the head with the gun. Jimmie Clark then handed the gun to Damon Clark, who walked away.

Dr. Heather Raaf, of the coroner's office, testified Reeves suffered two gunshot wounds, one to the head and one through the back. Because of the lack of gunshot residue, Raaf opined the shooter was at least three feet away when the shots were fired. The bullets recovered from the

3

victim's body were consistent with those belonging to a .45 caliber handgun.

Damon Clark turned himself in on November 8, 2002, when he learned police were looking for him. Damon Clark waived his <u>Miranda</u> rights and denied being at the murder scene. He told the police he was with his child's mother all night. All three Clark brothers were arrested in connection with the murder.

The jury found Damon Clark guilty of aggravated murder. The trial court sentenced him to the mandatory sentence of twenty years to life, with a consecutive three-year sentence for the firearm specification.

(Doc. 6, RX 6, at 2-5; State v. Clark, No. 83474, 2004 WL 2535271, at *1-*2 (Ohio

Ct. App. Nov. 10, 2004) (footnote omitted).)

## A.  Direct Appeal

On direct appeal, Clark raised three assignments of error:

1.  The trial court erred when it denied Appellant's request that the jury be instructed on the lesser included offenses of involuntary and voluntary manslaughter.

2.  There was insufficient evidence of prior calculation and design to support a finding of guilt for the offense of aggravated murder.

3.  The jury's verdict of guilty on the charge of aggravated murder was against the manifest weight of the evidence.

(Doc. 6, RX 4.)  The appellate court affirmed the judgment of the trial court.  (Doc.

6, RX 6; State v. Clark, No. 83474, 2004 WL 2535271 (Ohio Ct. App. Nov. 10,

2004.))  Clark did not appeal to the Ohio Supreme Court.

## B.  Motion for New Trial

On March 10, 2005, Clark filed a motion for leave to file a motion for a new

trial.  (Doc. 6, RX 7-8.)  The trial court denied his motion on March 22, 2005.  (Doc.

6, RX 9.) Clark filed a motion for findings of fact and conclusions of law in support of the denial on April 11, 2005, which was likewise denied. (Doc. 6, RX 10-11.)

Clark filed an appeal of the denial of his motion for findings of fact and conclusions of law. (Doc. 6, RX 12.) The court of appeals denied that motion on June 28, 2005, for failure to file the record. (Doc. 6, RX 13.) Clark moved for reconsideration on July 11, 2005, which was also denied. (Doc. 6, RX 14-15.)

Clark next appealed to the state high court. (Doc. 6, RX 16.) The Ohio Supreme Court denied leave to appeal on Nov. 23, 2005, and dismissed the appeal as not involving any substantial constitutional question. (Doc. 6, RX 17.)

### C. Rule 26(B) Motion to Re-Open Direct Appeal

On Sept. 8, 2005, Clark moved, under Ohio App.R. 26(B), for leave to re-open his direct appeal on the grounds that appellate counsel was ineffective. (Doc. 6, RX 18-19.) Clark sought to raise three assignments of error:

> 1. The Appellant was denied the effective of assistance of appellate counsel when counsel neglected to raise a Miranda violation on direct appeal.
>
> 2. The Appellant was denied the effective assistance of Appellate counsel when counsel failed to raise the ineffective assistance of trial counsel on direct appeal.
>
> 3. The Appellant was denied due process of law, procedural due process of law and the right to frame and present constitutional right violations before the reviewing courts when appellate counsel only provided him with select portions of the trial transcript.

(Doc. 6, RX 19.) The application to reopen was denied as untimely. (Doc. 6, RX 20-21; State v. Clark, No. 83474, 2006 WL 2096498 (Ohio Ct. App. July 25, 2006.))

5

Clark subsequently filed a motion for relief from judgment, which was denied

by the court of appeals.  (Doc. 6, RX 24-25.)

Clark filed this petition for a writ of habeas corpus on March 30, 2007.  (Doc.

1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291

F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Clark has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III.  STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a state prisoner seeking a federal writ of habeas corpus to file his petition within one year after his state conviction has become "final."  Carey v. Saffold, 536 U.S. 214, 216 (2002) (citing 28 U.S.C. § 2244(d)(1)(A)).  The conviction becomes final "by

7

the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Thus, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari.  Clay v. United States, 537 U.S. 522, 528 n.3 (2003); Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002); Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001), cert. denied, 534 U.S. 924 (2001) (citing cases).

On  Aug. 19, 2003, Clark was sentenced on the murder conviction.  The judgment entry of sentencing was dated Aug. 28, 2003.  (Doc. 6, RX 4.)  Clark filed a timely direct appeal.

The Ohio Court of Appeals ruled on Clark's direct appeal on Nov. 10, 2004, and the judgment entry was dated Nov. 22, 2004.  (Doc. 6, RX 6.)  Clark did not seek timely review by the Ohio Supreme Court within 45 days, pursuant to Ohio Supreme Court Rule of Practice II, Section 2(A)(1).  Thus, Clark's conviction became "final" within the meaning of AEDPA on Jan. 7, 2005.  Searcy v. Carter, 246 F.3d 515, 517 (6th Cir.), cert. denied, 534 U.S. 905 (2001).  Accordingly, the statue of limitations for filing his habeas petition would have expired one year later,  Jan. 7, 2006.

However, the limitations period is tolled while state post-conviction or collateral proceedings are pending.  Souter v. Jones, 395 F.3d 577, 585 (6th Cir. 2005); Searcy, 246 F.3d at 517-518; 28 U.S.C. § 2244(d)(2).  Because Clark filed a

motion for leave to file a motion for a new trial on Mar. 10, 2005 (doc. 6, RX 7-8), the limitations period was tolled after it had run for 62 days. That proceeding ran its course when the Ohio Supreme Court denied leave to appeal on Nov. 23, 2005. (Doc. 6, RX 17.) Thus, the statute resumed running, and Clark had 303 days remaining to file his habeas petition, that is, until approximately Sept. 23, 2006.

Meanwhile, on Sept. 8, 2005, Clark had filed for leave to re-open his direct appeal pursuant to Rule 26(B). (Doc. 6, RX 18-19.) The court of appeals dismissed the application as untimely. (Doc. 6, RX 20-21.) Clark argues that the limitations period should also be tolled during the pendency of this motion. (Doc. 7, at 7.)

However, an untimely post-conviction or collateral motion is not considered "properly filed" so as to toll the running of the statute of limitations. Williams v. Wilson, No. 03-4404, 2005 WL 2175914, at *3 (6th Cir. Aug. 9, 2005), cert. denied, 547 U.S. 1152 (2006) (citing Artuz v. Bennett, 531 U.S. 4, 8 (2000)); Israfil v. Russell, 276 F.3d 768, 771 (6th Cir. 2001), cert. denied, 535 U.S. 1088 (2002) (application for collateral review is "properly filed" when delivery in compliance with applicable rules governing filings); Webster v. Moore, 199 F.3d 1256 (11th Cir. 2000) (per curiam), cert. denied, 531 U.S. 991 (2000); Nichols v. Bradshaw, No. 1:03CV00565, 2006 WL 1805901, at *4 (N.D. Ohio June 29, 2006). Clark's untimely Rule 26 motion to re-open his appeal does not further toll the limitations period.

Therefore, the statute of limitations expired in September 2006. Because Clark did not file his petition for a writ of habeas corpus until March 30, 2007, he

did not file his habeas petition within the one year limitation period.  The petition

should be denied as untimely filed.


RECOMMENDATION

      It is recommended that the petition be denied.


Dated:   May 5, 2008                 /s/ Kenneth S. McHargh
                                               Kenneth S. McHargh
                                               United States Magistrate Judge

      ANY OBJECTIONS to this Report and Recommendation must be filed with

the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file

objections within the specified time WAIVES the right to appeal the District Court's

order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d

947 (6th Cir. 1981).

10