UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DAMON CLARK,** | : | Case No. 1:07-CV-940 |
| Petitioner, | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| **STUART HUDSON,** | : | **MEMORANDUM & ORDER** |
| Respondent. | : | |

On March 30, 2007, Damon Clark filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) On May 22, 2007, the Court referred this matter to Magistrate Judge Kenneth S. McHargh ("Judge McHargh"), ultimately for preparation of a Report and Recommendation ("R&R") regarding Hudson's petition. (Doc. 4.) On August 14, 2007, Respondent filed an Answer/Return of Writ. (Doc. 6.) On September 4, 2007, Clark filed a Reply/Traverse. (Doc. 7.) On May 5, 2008, Judge McHargh issued his R&R recommending that this Court deny Clark's petition as time-barred and dismiss this case. (Doc. 9.) On May 21, 2008, Clark filed objections to that R&R. (Doc. 10.)

The Court agrees with Judge McHargh's conclusions and **ADOPTS** his R&R. Accordingly, Clark's petition must be **DENIED** and his case **DISMISSED**.

## I. BACKGROUND

The R&R accurately sets forth the factual and procedural background of this case, and the Court adopts the R&R's articulation of that background. (R&R at 1-7.) For clarity, however, the Court will restate the facts and procedural history here.

The relevant facts were initially set-forth by the state appellate court:

> The Cuyahoga County Grand Jury indicted Clark on one count of aggravated murder with a three-year firearm specification. Clark's two brothers were indicted in the same case on the same charge. His brother Doug Clark was acquitted of the charge. In exchange for a guilty plea to aggravated assault, his brother Jimmie Clark agreed to testify on behalf of the State.
>
> At trial, Jimmie Clark testified that prior to the shooting of the victim, someone stole his brother Doug's car speakers. Sometime afterwards, he and his brothers met at their grandmother's house and discussed the theft and concluded Rayneel Reeves had committed the theft. Reeves was a known car thief who had previously repaired the speakers.
>
> During the discussion, Jerdel Griffin and Marlon Bell drove by in Griffin's car. They were friends of Reeves. Doug Clark and Griffin argued, and a fist fight ensued. Damon Clark and Bell pulled the men apart and Griffin left with Bell. However, approximately twenty minutes later, Griffin returned on foot along with his brother Jermel, Reeves, Dwayne Wilder and Reeves' brother, Tommie Smith. Griffin and Doug Clark fought again and the scuffle continued down the street. Jimmie Clark and Reeves then began to argue. Jermel Griffin returned to the area where Jimmie Clark and Reeves were. Thereafter, Reeves attempted to coerce Griffin and Jimmie Clark to fight. However, Jimmie Clark contended he only "exchanged words" with Griffin.
>
> While Jimmie Clark argued with Griffin, he saw Damon Clark, with a gun in his hand, chasing Reeves. He heard shots and observed Damon Clark aim a gun at Reeves. Reeves fell to the ground. Damon Clark continued running toward Reeves and shot him as Reeves lay on the ground. Reeves' brother Tommie Smith then began shooting at Damon and Jimmie Clark. Jimmie Clark admitted that Damon Clark and Reeves had "problems" in the past, but he did not know what it concerned.
>
> Officer Dwayne Duke testified that at approximately 11:30 p.m. he received a radio broadcast that shots were fired in the area of East 136th Street and Beachwood Avenue. When he arrived, the victim had already been taken to the hospital and a few spectators were present. He retrieved several shell casings from the scene. The shell casings were from a .38 caliber handgun and a .45 caliber handgun.

>Doug Wilder testified he was a friend of the Clark brothers and knew that Doug Clark owned a. 45 caliber handgun.  Wilder was also friends with Reeves and Smith. According to Wilder, on the evening of the shooting, he, Reeves, and Smith were working on a car in his backyard.  They went to East 137th Street and Beachwood Avenue around 11:00 p.m. to watch Griffin fight Doug Clark.  Wilder saw Griffin and Doug Clark sparring and moving towards East 136th Street.  He eventually lost sight of them and walked away, believing the fight was over. As he did so, he heard five to six gunshots.  He hid in nearby bushes until the shooting stopped.  He then peered from the bushes and saw Reeves lying on the ground with Damon Clark standing next to him pointing a gun at Reeves' back.
>
>Thereafter, Wilder observed Damon Clark flee in a vehicle with his two brothers. Marlon Bell testified he knew all parties involved.  He observed the fight between Doug Clark and Griffin earlier in the evening.  During that earlier fight, Doug pulled out a .45 caliber handgun and handed it to Damon Clark. Damon Clark then handed the gun to his brother Jimmie Clark.  When Bell attempted to break up the fight between Doug Clark and Griffin, Jimmie Clark hit Bell on the head with the gun.  Jimmie Clark then handed the gun to Damon Clark, who walked away.
>
>Dr. Heather Raaf, of the coroner's office, testified Reeves suffered two gunshot wounds, one to the head and one through the back.  Because of the lack of gunshot residue, Raaf opined the shooter was at least three feet away when the shots were fired.  The bullets recovered from the victim's body were consistent with those belonging to a .45 caliber handgun.
>
>Damon Clark turned himself in on November 8, 2002, when he learned police were looking for him.  Damon Clark waived his Miranda rights and denied being at the murder scene.  He told the police he was with his child's mother all night. All three Clark brothers were arrested in connection with the murder.
>
>The jury found Damon Clark guilty of aggravated murder.  The trial court sentenced him to the mandatory sentence of twenty years to life, with a consecutive three-year sentence for the firearm specification.

*State v. Clark*, 2004 Ohio 5964, ¶¶6–15 (Ohio Ct. App. 2004) (footnote omitted).

### A.  Clark's Direct Appeal

On direct appeal, Clark raised three assignments of error:

1. The trial court erred when it denied Appellant's request that the jury be instructed on the lesser included offenses of involuntary and voluntary manslaughter.

2. There was insufficient evidence of prior calculation and design to support a finding of guilt for the offense of aggravated murder.

3

    3. The jury's verdict of guilty on the charge of aggravated murder was against the manifest weight of the evidence.

(R&R at 4.) Clark did not appeal to the Ohio Supreme Court. (*Id*.)

### B. Clark's Motion for New Trial

On March 10, 2005, Clark filed a motion for leave to file a motion for a new trial. (*Id*.) The trial court denied his motion on March 22, 2005. (*Id*. at 4–5.) Clark filed a motion for findings of fact and conclusions of law on April 11, 2005, which was likewise denied. (*Id*. at 5.) Clark filed an appeal of the denial of his motion for findings of fact and conclusions of law. (*Id*.) This was denied on June 28, 2005, for failure to file the record. (*Id*.) Clark moved for reconsideration on July 11, 2005, which was also denied. (*Id*.)

Clark next appealed to the state high court. (*Id*.) The Ohio Supreme Court denied leave to appeal on Nov. 23, 2005, and dismissed the appeal as not involving any substantial constitutional question. (*Id*.)

### C. Clark's Rule 26(B) Motion to Re-Open Direct Appeal

On Sept. 8, 2005, Clark moved, under Ohio App.R. 26(B), for leave to re-open his direct appeal on the grounds that appellate counsel was ineffective. (*Id*.) Clark sought to raise three assignments of error:

    1. The Appellant was denied the effective of assistance of appellate counsel when counsel neglected to raise a Miranda violation on direct appeal.

    2. The Appellant was denied the effective assistance of Appellate counsel when counsel failed to raise the ineffective assistance of trial counsel on direct appeal.

    3. The Appellant was denied due process of law, procedural due process of law and the right to frame and present constitutional right violations before the reviewing courts when appellate counsel only provided him with select portions of the trial transcript.

(*Id*.) The application to reopen was denied as untimely. (*Id*.) Clark subsequently filed a motion for relief from judgment, which was denied by the court of appeals. (*Id*. at 6.)

4

### D. Clark's Habeas Petition

On March 30, 2007, Clark filed this pro se petition for a writ of habeas corpus, in which he raises the following grounds for relief:

1. The Petitioner was denied his constitutional right to a fair trial when the state allowed its chief witness to give false, misleading, and/or perjured testimony

2. The Petitioner was denied the effective assistance of appellate counsel when counsel neglected to raise a Miranda violation on direct appeal

3. The Petitioner was denied the effective assistance of appellate counsel when counsel failed to raise the ineffective assistance of trial counsel on direct appeal

4. The Petitioner was denied due process of law when appellate counsel only provided him with select portions of the trial transcript

5. The Petitioner was denied due process of law when the court of appeals refused his requests for a copy of their ruling on the petitioner's *pro se* application for re-opening of appeal.

(Doc. 1-1 at 2.)

## II. LAW AND STANDARD OF REVIEW

Because Clark filed his habeas petition on March 30, 2007, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of that petition. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003). AEDPA provides that when a federal habeas claim has been adjudicated by the state courts, a writ shall not issue unless the state adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

5

### A. Habeas Courts May Only Review Certain Errors

Even when the state has committed constitutional errors, a habeas court is not necessarily entitled to provide relief. A writ can only issue under 28 U.S.C. § 2254(d)(1) if a state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Under 28 U.S.C. § 2254(d)(2), a writ is only appropriate if the state adjudication was "objectively unreasonable," rather than merely erroneous or incorrect. *Williams*, 529 U.S. at 409-411. A habeas court, moreover, reviews only for serious constitutional errors and does not engage in factual error correction. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). To the extent a state court's factual conclusion is alleged to be erroneous and to have resulted in a constitutional violation, the state court's finding is rebuttable only by clear and convincing evidence to the contrary. *McAdoo v. Elo*, 365 F. 3d 487, 493-494 (6th Cir. 2004).

### B. The AEDPA Statute of Limitations

AEDPA bars a habeas court from considering any habeas petition that is untimely. Usually, any petition must be filed within one year after a state-court prisoner's conviction has become "final." *Carey v. Saffold*, 536 U.S. 214, 216 (2002). The conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Thus, the one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari. *Clay v. United States*, 537 U.S. 522, 528 n.3 (2003). Of particular relevance to this petition, the AEDPA limitations period is tolled while properly-filed state post-conviction or collateral proceedings are pending. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

6

The Supreme Court has explained that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, [and] the time limits upon its delivery . . . ." *Id.* (emphasis added).

### III. THIS COURT ADOPTS THE R&R

The R&R correctly concluded that Clark's claims are barred by AEDPA's statute of limitations. Although the majority of Clark's objections to the R&R essentially restate the arguments made to, and properly rejected by, Judge McHargh, the Court will directly address the substance of these arguments. *But see Pimental v. Hudson*, No. 1:07-CV-01163, 2008 U.S. Dist. LEXIS 86012, at *6 (N.D. Ohio Sept. 5, 2008) ("[Petitioner] merely restates the arguments he made before the magistrate judge. [This] is functionally the same as filing no objection at all." (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991))); *King v. Caruso*, 542 F. Supp. 2d 703, 706 (E.D. Mich. 2008) (same). Although such a review is not mandated by the Sixth Circuit, it is the better practice for all but the most frivolous arguments, because even a brief treatment of the substance of a petitioner's objections limits the potential that a meritorious petition is rejected.

#### A. Clark's First Assignment of Error

Clark first reiterates his argument that this Court should consider the statute of limitations tolled during the pendency of his Rule 26(B) motion. (Doc. 10 at 1.) If it is not, of course, Clark's petition must be barred as untimely.[1] The problem for Clark is that his Rule 26(B)

---

[1] Clark's conviction became final on January 7, 2005, giving Clark until January 7, 2006 to file any petition. (*See* R&R at 8.) The statute of limitations was tolled on March 10, 2005, when Clark sought leave to file a motion for a new trial. (*Id.*) It began running again when the Ohio Supreme Court declined to grant such leave on November 23, 2005. (*Id.* at 8-9.) If the statute of limitations was not tolled during the pendency of Clark's Rule 26(B) motion, then, AEDPA's statute of limitations would have run by approximately September 23, 2006, six months before Clark filed this petition. (*Id.* at 9.)

7

motion was itself dismissed as untimely, and an untimely Rule 26(B) motion does not toll the AEDPA statute of limitations, because "untimely state collateral attacks are not properly filed and do not toll the statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003); *see also Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005) (*en banc*) (explaining that Rule 26(B) motions are subject to this requirement). Clark's assertion, then, that an untimely Rule 26(B) motion is "properly filed" (*see* Doc. 10 at 3) is not accurate.[2] The AEDPA prevents this Court from considering Clark's substantive claims.

Clark next argues that, even if his Rule 26(B) motion was not properly filed, the Court should toll the statute of limitations because Clark honestly believed that the filing of even an untimely Rule 26(B) motion would toll the statute of limitations. (Doc. 10 at 4.) This is, essentially, a request for equitable tolling. *See Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001). The Court is not unsympathetic to Clark's argument, in no small part because the Sixth Circuit itself was once split on whether Rule 26(B) motions were subject to the "properly filed" requirement. *See generally Lopez*, 426 F.3d at 352. Granting Clarks' request, however, would be inappropriate. *Winkfield v. Bagley*, 66 Fed. Appx. 578, 583 (6th Cir. 2003) ("[C]ourts are reluctant to find that a lack of actual notice of the AEDPA, or ignorance of the law in general, may excuse a late filing"); *Dew v. Pancake*, Case No. 5:07CV-P37, 2007 U.S. Dist. LEXIS 90343, at *7–8 (W.D. Ky. Dec. 7, 2007) ("[T]he Sixth Circuit has consistently

---

[2] Clark argues that the "granting or denial of [a] State Court" petition should not "have any effect upon proper application of the tolling provision." (Doc. 10 at 3.) This is true when a a state court addresses the merits of a petition. When a state court dismisses a petition as untimely, however, that petition is not considered to be properly filed. *See Shingleton v. Timmerman-Cooper*, Case No. 3:03cv450, 2006 U.S. Dist. LEXIS 95932, at *8 (S.D. Ohio Aug. 8, 2006) ("[Petitioner's] untimely Rule 26(B) Motion . . . did not again toll the limitations period because it was not properly filed.").

8

recognized that ignorance of the law does not excuse prompt filing." (collecting cases)); *Steward v. Wilson*, 555 F. Supp. 2d 858, 877 (N.D. Ohio 2006) ("An inmate's lack of legal training, poor education, or even his illiteracy does not give a federal court a reason to toll the AEDPA's limitations period.").

Particularly given the Sixth Circuit's clear mandate that untimely Rule 26(B) motions do not operate to toll the AEDPA statute of limitations, Clark cannot satisfy the Sixth Circuit's five-factor test necessary to assert equitable tolling. *See Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001). For the Court to hold otherwise would circumvent clear direction from the Circuit that late-filed Rule 26(B) motions are subject to the "properly filed" requirement. *Lopez*, 426 F.3d at 346; *see also Williams v. Ohio*, Case No. 1:07cv3681, 2009 U.S. Dist. LEXIS 121724, at *18 (N.D. Ohio Sept. 2, 2009) ("[Petitioner's Rule 26(B)] application was not 'properly filed' and thus, did not toll the statute of limitations."); *Dean v. Jeffries*, Case No. 3:06cv1291, 2007 U.S. Dist. LEXIS 83855, at *4–5 (N.D. Ohio Nov. 13, 2007) (same); *Brownlow v. Konteh*, Case No. 3:05cv1118, 2007 U.S. Dist. LEXIS 77968, at *12–13 (N.D. Ohio Oct. 19, 2007) (same).

### B. Clark's Second Assignment of Error

Clark's second objection is that Judge McHargh should not have considered the state court's collateral rulings because Clark never received official notice of these rulings. (Doc. 10 at 5.) Clark alleges that the postcards sent to him informing him of their rulings (Doc. 1 at Ex. 9) were legally insufficient.[3] About this, he is incorrect: there is nothing unclear or misleading about the postcards such that they failed to provide him notice. *See Whatley v. Smith*, Case No.

---

[3] Although deficiencies in civil collateral proceedings are not cognizable on habeas review as a ground for relief, *see Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002), out of an abundance of caution, the Court has interpreted Clark's argument here to be an equitable one related to tolling the statute of limitations.

9

1:08cv1632, 2009 U.S. Dist. LEXIS 111867, at *40–44 (N.D. Ohio June 4, 2009) (finding these postcards consistent with due process).

### C. Clark's Third Assignment of Error

Clark next argues that the R&R should have considered the substantive merits of his claims. (Doc. 10 at 7.) As this Court has already explained, however, the AEDPA instructs a district court not to consider the substantive merits of a late-filed petition. *See Carey*, 536 U.S. at 216.

### D. Clark's Fourth Assignment of Error

Clark's final argument appears to be that, even if this Court denies him relief, Clark should be granted a certificate of appealability because he, and other Ohio petitioners, are misled by Ohio's procedural rules for filing Rule 26(B) petitions. It seems that Clark's argument could be interpreted in one of two ways, both of which the Court must reject. First, to the extent Clark intends to argue that there is some deficiency in Ohio's collateral proceedings, such a claim is not cognizable: "relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not custody of a defendant." *Whatley v. Smith*, Case No. 1:08cv1632, 2009 U.S. Dist. LEXIS 111867, at *35–36 (N.D. Ohio June 4, 2009); *see also Whatley v. Smith*, Case No. 1:08cv1632, 2009 U.S. Dist. LEXIS 111844, at *18–19 (N.D. Ohio Nov. 30, 2009) ("Because the Rule 26(B) motion constituted a civil matter, no right to federal habeas review flows from it."). On the other hand, if Clark is instead arguing that the Sixth Circuit should reconsider its ruling in *Lopez,* this Court cannot presume that the Sixth Circuit would reverse itself less than five years after issuing that *en banc* ruling. No matter how this Court construes Clark's argument, then, it cannot conclude that a Certificate of Appealability is appropriate.

## IV. CONCLUSION

For the foregoing reasons, this Court **ADOPTS** the R&R (Doc. 9) and **DENIES** Clark's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Accordingly, Damon Clark's case is **DISMISSED**. The court certifies, pursuant to 28 USC 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability. 28 USC 2253; Fed.R.App.P. 22(b).

**IT IS SO ORDERED.**

                                                 **s/Kathleen M. O'Malley**
                                                 **KATHLEEN McDONALD O'MALLEY**
                                                 **UNITED STATES DISTRICT JUDGE**

**Dated: March 4, 2010**